UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANA BECKHORN,

                      Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
et al.,

                      Defendants.
_____

**REPORT AND RECOMMENDATION**

18-CV-01452-LJV-JJM

        Plaintiff commenced this action alleging violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Complaint [1].[1] Before the court is defendants' motion for dismissal of the First Amended and Supplemental Complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [21], which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [22]. Having reviewed the parties' submissions [21, 26, 27], I recommend that the motion be granted in part and denied in part.

**BACKGROUND**

        The Amended Complaint [18] alleges that while incarcerated by defendant New York State Department of Corrections and Community Supervision ("DOCCS"), plaintiff participated in a three-step Comprehensive Alcohol and Substance Abuse Treatment program.

---

[1]     Bracketed references are to the CM/ECF docket entries, and page references are to numbers reflected on the documents themselves rather than to CM/ECF pagination.

Id., ¶54. After completing phase I of the program, which consisted of a six-month residential substance abuse treatment, plaintiff was found eligible to participate in phase II, a temporary release program. Id., ¶¶38, 55. To do so, he was transferred on March 6, 2018 to the Rochester Correctional Facility, which offered two types of temporary release programs: work release and community service. Id., ¶¶58, 61. On March 7, 2018, defendant Anthony Annucci, the Acting Commissioner of DOCCS, issued plaintiff a merit time allowance based on his successful program participation, which made him eligible for parole release on July 6, 2018. Id., ¶¶59, 60.

Plaintiff alleges that upon arriving at the Rochester Correctional, he informed his Offender Rehabilitation Counselor ("OFC") that he required a lighter duty placement because of a shoulder injury for which he had applied for Workers' Compensation benefits. Id., ¶¶63-66. His OFC advised him that because of his disability, he should voluntarily sign out of the work release program, and instead participate in the community service program. Id., ¶¶61-67. After the OFC assured plaintiff that it would not affect his release date, he applied for community service. Id., ¶¶68-69.

Thereafter, plaintiff appeared before the Temporary Release Committee ("TRC"), the entity tasked with evaluating the suitability of participants in the temporary release program and making recommendations regarding continued program participation. Id., ¶¶72, 73. At that time, the members of the TRC (defendants Joanne Marion, C. Lepinskie, and Dicesare (collectively, the "TRC defendants")),[2] told plaintiff that because of his disability, they "thought it would be best if he remained at the facility and worked in the kitchen until his merit release date of July 6, 2018". Id., ¶74. Plaintiff agreed to that plan and began working in the facility kitchen the next day, and also later performed regular work on the grounds crew. Id., ¶¶75-77.

---

[2]   The first names of defendants Lepinskie and Dicesare are not included in the Amended Complaint.

Some time after his initial appearance before the TRC, Akinyemi Awopetu, the Superintendent of the Rochester Correctional Facility, denied plaintiff's application for community service. Id., ¶79. Plaintiff was then referred back to the TRC. The notice stated that the reason for the referral was that he "was denied community service leave by [Superintendent] due to inmate's request to remain unemployed and statement of not being able to work, because he's involved in a worker's compensation case". Id., ¶81.

Plaintiff alleges that at his April 10, 2018 appearance before the TRC, he explained that he had never refused to work, and had opted out of work release on the advice of his ORC. Id., ¶82. When plaintiff stated that he was capable of performing "jobs that do not involve intensive manual labor, such as secretarial work", defendant Marion stated that even as a secretary "he could still fall off his chair and injure himself, and New York State could not afford to take that risk given his disability". Id., ¶¶85-86. He also reminded the TRC defendants that he worked daily in the facility kitchen. Id., ¶87. When plaintiff asked why he was capable of performing that work, but not working outside of the facility, the TRC defendants responded that "work release is different because it might affect his workers' compensation case". Id., ¶¶87, 88.

At the conclusion of the April 10, 2018 hearing, the TRC defendants informed plaintiff that "their decision to deny him work release was merely for his benefit and would not count against him". Id., ¶90. Less than a week later he was transferred to the Wyoming Correctional Facility, a prison without a temporary release program, and was informed that his July 6, 2018 merit release eligibility date had been revoked due to his removal from the temporary release program. Id., ¶¶92-93.

As a result of this conduct, the Amended Complaint [18] asserts claims against DOCCS, Annucci, Deputy DOCCS Commissioner Jeffrey McKoy, and the State of New York

(collectively, the "State defendants") for disability discrimination, retaliation and interference, in violation of the ADA, 42 U.S.C. §§12132, 12203(a), (b), and Section 504 of the Rehabilitation Act, 29 U.S.C. §12203(a). Id., First-Fourth Claims for Relief.  It also alleges a due process claim against the TRC defendants.  Id., Fifth Claim for Relief.

District Judge Vilardo previously granted plaintiff's motion for a preliminary injunction and directed defendants to immediately reinstate his previously revoked merit time allowance and to have him appear before the New York State Board of Parole for consideration of merit release on parole. See Beckhorn v. New York State Department of Corrections & Community Supervision, 2019 WL 234774 (W.D.N.Y. 2019).  Plaintiff has since been released from DOCCS custody.  See Amended Complaint [18], ¶¶2, 49.

Defendants now move to dismiss: 1) defendants Annucci and McKoy, who are sued in their official capacity for injunctive relief only (Amended Complaint [18], ¶¶20, 23), on mootness grounds; 2) the due process claim against the TRC defendants for failure to state a claim; and 3) the claims against the State defendants on sovereign immunity grounds. [21].[3]

---

[3]   "[W]ithin the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved." Riley v. Cuomo, 2018 WL 1832929, *2 (E.D.N.Y. 2018). "The distinction is significant: while [the court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under [Rule] 12(b)(6) . . . in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 (2d Cir. 2007). However, I need not resolve that conflict, since defendants have neither moved pursuant to Rule 12(b)(1) nor relied on materials outside of the pleadings.

## DISCUSSION

A.  **Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. "When, as here, the complaint is filed by a pro se plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010).

B.  **Defendants Annucci and McKoy**

Plaintiff does not object to the dismissal of these defendants. Plaintiff's Memorandum of Law [26], pp. 15-16.  Therefore, I recommend that this portion of defendants' motion be granted.

C.  **Due Process Claim Against the TRC defendants**

"Inmates participating in the temporary release program in New York State have a liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment." Quartararo v. Hoy, 113 F. Supp. 2d 405, 412 (E.D.N.Y. 2000); Anderson v. Recore, 446 F.3d 324, 328 (2d Cir. 2006) ("Anderson had a liberty interest in continuing his participation in the temporary release program"); Friedl v. City of New York, 210 F.3d 79, 84 (2d Cir. 2000)

("[p]risoners on work release have a liberty interest in continued participation in such programs"). *See also* Brown v. Fischer, 2011 WL 4056302, *5 (S.D.N.Y.), adopted, 2011 WL 4069663 (S.D.N.Y. 2011) ("[a]lthough prisoners do not have an enforceable right to gain entry to work release programs, they do have a liberty interest in remaining in such programs once their participation has commenced"). Defendants acknowledge that an inmate in a temporary release program cannot be deprived of his or her liberty interest in participating in the program without notice, a hearing, and "'the commissioner's independent, good faith evaluation'". Defendants' Memorandum of Law [21-1], p. 4 of 7 (CM/ECF) (*quoting* Tracy v. Salamack, 572 F.2d 393, 397 (2d Cir. 1978)). *See also* Hollingsworth v. Robinson, 901 F. Supp. 565, 570 (E.D.N.Y. 1995). Nor do they dispute that there must be "'some evidence'" in the record to support the determination. Plaintiff's Memorandum of Law in Response [26], p. 9 (*quoting* Friedl, 210 F.3d at 84). *See* Quartararo, 113 F. Supp. 2d at 413.

In addition to challenging the sufficiency of the notice for the April 10, 2018 TRC hearing, plaintiff argues that the TRC defendants were biased and that their determination lacked evidentiary support. Plaintiff's Memorandum of Law in Response [26], pp. 9-13. In response, defendants argue that the reasoning for plaintiff's "removal from the work release program (i.e. 'removal from temporary release, due to inmate's request to remain unemployed, because of his active workers' compensation case' and 'removal justified due to refusal to work') are valid and demonstrate a neutral decision maker with sufficient evidence". Defendants' Reply [27], p. 4.

Crediting the allegations of the Amended Complaint (as I must), I conclude that plaintiff has plausibly alleged that he was deprived of adequate due process by the TRC defendants. According to the allegations of the Amended Complaint [18], the TRC defendants understood that plaintiff was not refusing to perform all work, just work that his disability

prevented him from performing. Id., ¶¶83, 86.  Even if it was permissible for plaintiff to be removed from the temporary release program because his disability physically prevented him from participating, the Amended Complaint sufficiently alleges that his disability did not prevent him from performing all work, and that the TRC defendants were aware of that fact.  For example, plaintiff alleges that DOCCS medical staff determined that plaintiff's disability did not prevent him from maintaining employment in the community (id., ¶57) and that the TRC defendants were aware of his daily work at the facility kitchen - work that the TRC suggested he perform until his July 6, 2018 merit release date. Id., ¶¶74, 87.  The Amended Complaint further alleges that it was the TRC defendants, not plaintiff, who were concerned with participation in the program impacting his Workers' Compensation case. Id., ¶¶87-88.

DOCCS regulations state that "[a] superintendent may revoke an inmate's participation in the temporary release program upon recommendation of the [TRC] . . . that the inmate's continued participation in a temporary release program is inconsistent with the safety of the community, is inconsistent with the best interest of the inmate, or if the inmate has indicated by his conduct that there is a substantial likelihood that he cannot successfully adjust his temporary release program." 7 N.Y.C.R.R. §1904.1(b).  Crediting the allegations of the Amended Complaint, it is difficult to conclude that there was *any* evidence supportive of the TRC's recommendation to terminate plaintiff from the temporary release program.

Defendants contend that "[i]t is uncontroverted that Plaintiff never achieved paid work while in the program and therefore never achieved the reintegration element the program requires". Defendants' Reply [27], p. 3. That may be so, but the Amended Complaint alleges that this was not the result of plaintiff's refusal to perform (or request to be excused from) paid work.  Defendants will have an opportunity during discovery to challenge these allegations, but

taken as a whole they are sufficient at this stage to plausibly state a due process claim. Therefore, I recommend that this portion of defendants' motion be denied.

**D.      Claims against the State Defendants**

Defendants argue that the ADA claims against the State defendants are barred by sovereign immunity. Defendants' Memorandum of Law [21-1], §III.[4] As both parties recognize, in United States v. Georgia, the Supreme Court held that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. 151, 159 (2006) (emphasis in original), but it expressly left open the question of whether Title II validly abrogates sovereign immunity for conduct that violates Title II, but does not violate the Fourteenth Amendment. *See* Dean v. University at Buffalo School of Medicine & Biomedical Science, 804 F.3d 178, 194 (2d Cir. 2015).

In the absence of any express guidance on that question, the Second Circuit has indicated that it should be addressed "on a claim-by-claim basis" to determine "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Id.

Although the parties dispute whether the conduct alleged in the Amended Complaint rises to the level of a Fourteenth Amendment violation (plaintiff's Memorandum of

---

[4]      Although the defendants originally argued that the Rehabilitation Act claims were also barred by sovereign immunity, they concede in their reply that sovereign immunity has been waived for Rehabilitation Act claims. Defendants' Reply [27], p. 1 n. 1.

Law in Response [26], pp. 14-15; defendants' Reply [27], p. 2), it is not necessary for me to resolve that issue at the pleading stage.  "Because sovereign immunity does not bar plaintiff's Rehabilitation Act claim, the court has subject matter jurisdiction over this action regardless of [the State defendants'] immunity from the ADA claim. Consequently, there is no risk of violating [their] 'right not to be haled into court' when [they are] immune from Suit . . . .  Moreover, the remedies available to plaintiff under Title II of the ADA and the Rehabilitation Act are identical. . . . Thus, as a practical matter, this case will proceed on the same course regardless of whether [the State defendants] may later be found immune from plaintiff's ADA claim." Ross v. City University of New York, 211 F. Supp. 3d 518, 528 (E.D.N.Y. 2016).  Therefore, I recommend that this portion of the motion be denied.

## CONCLUSION

For these reasons, I recommend that defendant's motion to dismiss [21] be granted to the extent that it seeks dismissal of defendants Annucci and McKoy, but otherwise be denied.  Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by October 24, 2019.  Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 10, 2019

                                                /s/ Jeremiah J. McCarthy
                                                JEREMIAH J. MCCARTHY
                                                United States Magistrate Judge